at all. Mr. Stokes, whenever you're ready. I'm ready. I thought we were the third case on the calendar, not the second. Do you have the little cover for the microphone? Can you give him one? I sure do. I sure do. You know, I've argued a lot of cases in this courtroom in front of you all, and we've had some issues that were resolved favorably, which I would call, and some that didn't. But this case involves my client, who is a transgender individual who was incarcerated at the time in the Georgia Department of Corrections. They prescribed him estrogen injections, and he developed female traits, which obviously were attractive to some inmates. And he kept requesting of every warden to be protected in accordance with the Prison Rape Elimination Act. He kept being deliberately indifferent. He then got raped or physically attacked, and he then ended up in the hospital. And he then happened to file what is called PREA reports, which the law provides in the thing. The defendants who were wardens in this case and unit managers were just deliberately indifferent to his situation, and they kept exposing him to serial rapes. Well, let's talk, Mr. Stokes, about each one of the incidents separately, because they occur at different institutions with different defendants, right? Yes. Okay. So we can't lump them all together. So with regards to the first incident, which was alleged to have happened in April of 2017 at Autry State Prison, the complaint alleges that Mr. Cox was assaulted on April 27th of that year by another inmate. But there's not really an allegation of what happened before then to have put Deputy Warden Nobles and Officer Crump on any sort of notice that something was going to happen. Well, I think there was, Your Honor. And then nothing, I don't want to minimize what your client was supposedly subject to. I don't want to minimize that at all. But we're trying to figure out liability for a couple of defendants in every situation. And after he was assaulted by the other inmate on April 27th, there are no other assaults or attacks, sexual or otherwise, at Autry State Prison. So if that's the first incident that occurred, how are Deputy Warden Nobles and Officer Crump to have had any notice for deliberate indifference that something was going to happen to Mr. Cox? Well, the Prison Rape Elimination Act tells him to take extraordinary steps to protect transgender. And it was obviously he was transgender. He knew that, Warden Nobles. You're saying the PREA sets out basically tort standards that are enforceable in a 1983 action? I am. Okay. But they're not, and what the district court said, that there's no per se statute that says violation of the PREA. But the PREA puts him on notice that then sets up the 1983 violations and the Eighth Amendment. He made a PREA complaint when he first went in this prison. Into Autry State Prison? I think he does. I may have lumped it and said they all did. In every prison he did that. Well, let's assume that Mr. Cox filed a PREA demand when he went to Autry State Prison in 2017. Is everybody in the prison on notice of that PREA demand so as to be liable under 1983? Because for that prison, you sued a Deputy Warden and a Corrections Officer. Well, yes. Let's assume you're right. In that case, Benji Nobles, I believe he was an acting warden at the time. You named him as a Deputy Warden. Deputy Warden, yeah. Okay. So, if you are right that the PREA sets out enforceable tort-like standards in a 1983 action for Eighth Amendment purposes, who gets held liable at Autry State Prison due to the PREA complaint that Mr. Cox filed? Well, the Deputy Warden, as I've alleged it. And what about Officer Crump, whom you also sued with regard to Autry State Prison? Well, Officer Crump never got sued. He never got served. I know he's out of the case because of lack of service, but why would he be liable? We have to write an opinion. If we accept your argument about the PREA, we have to draft an opinion as to who is subject to notice once a PREA complaint is filed or demand is filed at a prison. And I'm trying to ask you how we differentiate among the numerous types of people who work at a prison. Well, in this case, it was patently obvious that he was a transgender. The statute, PREA, requires that the prisoners, that the prison officials take additional steps to protect him, including putting him in a separated area. And that could have been done. But in either case, first of all, and he makes a complaint to Crump, Officer Crump, that nothing got done. The pattern is very similar to every one of them. He comes in and he says, look, I'm transgender. I've got, I want the protection under PREA. They don't do it. He gets raped or he gets physically assaulted. He files a complaint under PREA and nothing gets done again. They send him to another prison. And the same thing does it over and over again. Okay. Let's talk about 2018 in Central State Prison. Where did that assault by the other inmate take place? The complaint is... Well, that was by Israel. ...hopelessly unclear about where it occurred. I think in that case, he was watching television and he got attacked and then he had protected himself. So where was he? He was watching in like a recreation room or a TV room or something like that? As I understand, it was a TV room. Then how does the lack of segregation in a dorm have any effect on him getting assaulted in a recreation room where a number of different types of inmates congregate at different times of the day? Your Honor... ...who filed the PREA demand, he needs to be segregated 24 hours a day from everybody else. Yes, he should have been put in a PREA dorm. And they do exist, but they didn't do it. That protects everybody. The PREA complaint, is that a standard form or what's in it? Because you don't allege in your complaint what it contains. Well, first of all, there's a hotline, as I understand it, that he calls on the telephone and explains how he's been abused. It's a form. Judge Pryor, I'm not sure exactly. Okay. Is there anything in the complaint to indicate that this PREA put the prison I'm not sure of that. I can't answer that question forthright. So to go back to Judge Jordan's question, are you arguing that anytime a transgender inmate files a PREA, there can be an Eighth Amendment violation if that person is not segregated from the regular population? Is not protected. Yes, I can. And by the way, that's exactly what happened in the precedent Supreme Court case that I'm following, that 25 years ago, or actually 35 years ago. And it was a transgender case that he kept being attacked and they kept ignoring it. And that's exactly on all fours with the Brennan case. And I'm saying, to say that there was no notice, I submit that is absolutely wrong. And it's alleged that we had a PREA warning. He told them that just being there was enough. And by the way, the PREA does say that you must take special precautions with transgender inmates in order to take precautions. And one of the precautions is to put them in a PREA-separated dorm. Okay, Mr. Stokes, thank you very much. You've saved your five minutes for rebuttal. Thank you. Is it Shapiro or Shapiro? Shapiro, Your Honor. Mr. Shapiro, go right ahead. May it please the Court, Robert Shapiro on behalf of the appellees. This case presents the question of whether knowledge of an inmate's transgender status when coupled with a request for protective housing gives rise to a subjective awareness of a substantial risk of harm. And here, the key facts of the amended complaint are that the wardens at all three institutions where Plaintiff Cox was housed were notified of her transgender status, that Plaintiff Cox requested protection in accordance with PREA from each of the three wardens, and ultimately that all three wardens failed to take the affirmative step of placing Plaintiff Cox in protected or segregated housing prior to an assault occurring. However, what is lacking from the amended complaint are allegations that provide specific facts from which the wardens or any other defendant could infer that there was a substantial risk to Plaintiff Cox's safety, either from her assailants or from other inmates in general, and that with that knowledge they failed to respond. Well, let's parse that a little bit. This was dismissed at the pleading stage, right? Correct. And so all you have to do is set out a plausible claim and the district court didn't dismiss on qualified immunity grounds. Correct, Your Honor. So this is just a pure 12B6 merits dismissal, failure to state a claim, right? Correct, Your Honor. Okay, so let me give you a hypothetical, not this case, but taken partly from this case and get your reaction to it. So if Mr. Cox's, and I refer to him as Mr. because of the name on the style of the case, if Mr. Cox had filed a PREA demand when he was moved to Central State Prison in 2018, in which he detailed not only that he was a transgender inmate, but that he had requested segregated housing at Autry State Prison, been denied that, and then was assaulted by an inmate because of that. When he gets moved to Central State in 2018, he says, this happened to me once before. I'm asking you now to please put me in segregated housing so it doesn't happen again, right? Yes, Your Honor. Not put in segregated housing, sexually assaulted there. Is there subjective knowledge sufficient to get past the 12B6 motion? Yes, Your Honor. And in that hypothetical, I would agree that there's subjective awareness. And the key, that hypothetical, in fact, points out the key defect of the amended complaint, which is that the court is being asked to infer subjective awareness for several different individuals based on the fact that Plaintiff Cox submitted what the amended complaint describes as simply PREA complaints or PREAs. However, we have no allegation as to what is the substance of these PREA complaints that are submitted at each institution. There is no facts detailing what was ultimately alleged. And without that information, the court is unable to determine whether prison officials had specific facts from which they could infer that there's a substantial threat to Plaintiff Cox's safety as opposed to a merely possible threat. And that distinction is made very clear in this court's case law dealing with deliberate indifference claims, is that if subjective awareness is to be based on notice to prison officials, then the notice to prison officials must provide sufficient facts to allow them to infer that the risk to the inmate is substantial instead of merely possible. So under that hypothetical, I think that there would be sufficient facts fled to allow prison officials to determine that there is, based on the prior sexual assault, a substantial risk. And the case that's, I believe, most on point and similar to the hypothetical that Your Honor poses is the Diamond v. Owen case that was cited to you by my colleague in their brief. That case is illustrative in that it demonstrates what must be pled in a complaint like this in order to establish subjective awareness of prison officials. The judge in that case described it as having covered the waterfront of allegations tending to show subjective awareness. And those included things like the fact that the plaintiff in that case had met with the defendants and discussed her prior sexual assaults. It included the fact that defendants had been notified through the filing of PREAs and through the prison institutional records that the plaintiff had been sexually assaulted at other close security institutions. It included the fact that the prison medical director had contacted the defendants and warned them that given the inmates' transgender status, she was at a substantial risk of being sexually assaulted. Those are the types of additional facts that would need to be pled in this complaint in order to allow the court to determine that the prison officials had sufficient facts to infer a substantial risk versus a merely possible risk. The complaint's allegations against defendant Harris seem different from the other allegations against the other defendants. The complaint alleges that Harris was aware of the fight or altercation between Cox and Frazier, and Harris removed Cox from the shared cell, but the two remained in the same dorm, and then Frazier assaulted Cox again. Why wouldn't those facts be sufficient under the case law to show subjective awareness of harm on Harris's part? Well, Your Honor, I would push back just slightly against that uh, aware of the original altercation between Plaintiff Cox and the other inmate. It simply states that a PREA complaint is filed and that Unit Manager Harris is notified that the PREA complaint is filed. We cannot discern from the facts as they are stated in the amended complaint that Unit Manager Harris was aware of the particulars of what took place between Plaintiff Cox and the other inmate at Augusta State Medical Prison, and the reason I point that out is these are deliberate indifference claims, and in deliberate indifference claims, what is paramount is the knowledge of the individuals, and so we must look to the complaint to determine what were the facts that they were aware of, and so in that circumstance, again, I would just push back slightly against that characterization and then point out that once Unit Manager Harris is made aware that there's a particular altercation between Plaintiff Cox and her, what it seems to her cellmate, immediately Unit Manager Harris responds by separating the two inmates, and that response was reasonable. If you're aware of an altercation between two inmates in their house in a cell together, it's a reasonable response to separate them. So you're just quibbling over whether Harris was aware at the time or was told, but from the allegations and the fact that Harris had Cox removed from the cell, it seems like they've pled that at least at some point Harris became aware. The amended complaint alleges that Harris becomes aware when Plaintiff Cox comes to Unit Manager Harris, asks why no steps have been taken with regard to the pre-complaint that she filed, and so from those facts, I think we can infer that that Plaintiff Cox likely told Unit Manager Harris at that time what were the particulars of the altercation with the other inmate. But then there was, as I read the complaint, then there was a stabbing, or you read their chronology differently. No, I read it the same way, Your Honor, and that takes me to my second point, which is that if we're putting aside the question of subjective awareness prior to any assault occurring, we have to address whether or not the steps taken by prison officials were reasonable once they do become aware of the risk to Plaintiff Cox. And what the complaint clearly shows is that in each instance where prison officials were made aware that there was a substantial threat, usually through the fact that an altercation had actually occurred at that point, they responded by either separating Plaintiff Cox from her assailant, placing her in lockdown, or what the amended complaint describes as a pre-lockdown, or transferring her to a different institution. Now because the Constitution only requires that prison officials take reasonable steps to protect inmate safety when they become aware of a reasonable means that there is no Eighth Amendment liability. Each of the defendants responds reasonably once they are made aware of particular facts from which they can infer that there's a continuing threat to Plaintiff Cox's safety. You can't keep moving an inmate from institution to institution, have the inmate assaulted at each institution, and then send him or her to the next one where the same things are going to happen again, and then say, yeah, we, we did what we could. And so the inmate goes to 12 different institutions in the state, and it's assaulted sexually 12 times, and everybody says, oh, did what I could, send them on to the next place. That can't be right. No, Your Honor, and apologies if I was unclear, and we're very sensitive to that concern. It is not to say that simply by transferring an inmate from one institution to the other to the other, they can hope to avoid liability. I think, though, that, again, this points out that what is key that is missing here is whether or not prison officials are aware of prior sexual assaults at the previous institutions. That puts them on notice and enables them to make a determination that perhaps this particular inmate is best housed in a segregated or a protected environment due to the history of sexual assaults. But here we have— But don't, don't, don't correctional officials look at the file of an inmate once he or she is transferred to their institution? Certainly on this— I mean, you're telling me they just take them in and like, oh, okay, another one coming in the door. On this record, Your Honor, it's unclear what records travel with the inmates or whether or not it's being reviewed by prison officials. However, accepting that premise that prison officials are reviewing records— I mean, you would hope so. If not, the state's in pretty bad shape. I would agree with that, Your Honor, and we certainly would not condone negligence on the part of prison officials in not reviewing records. However, I think it's worth noting that the failure to review a prison record, would it most be negligence? And this Court's cases say that even gross negligence is not sufficient to establish— I know, but going back to Judge Pryor's question, again, I don't know what the ultimate answer is, but we're dealing with a 12B6 dismissal where what you have to do is not prove your claim, not provide evidence of your claim, but allege enough to make a claim plausible. Correct, Your Honor. And we're talking— I mean, I put you down this road, so I'm not blaming you for answering it, but we're talking about hypotheticals and things that may or may not be in the record where we should be talking about plausibility. And I know I took you down that road, so I take responsibility for doing that, but, you know, the question of whether or not he can ultimately prevail or even get past a summary judgment motion is not the same question as whether or not he can get past a 12B6 dismissal. That's correct, Your Honor. However, under the pleading standards that are established in Ashcroft v. Iqbal, you have to plead sufficient facts to take the— to take it beyond the mere realm of a possible misconduct by prison officials. You have to plead sufficient facts to establish each necessary element of your claim. And here, what again is key that we are lacking is any facts that would show that these prison officials are subjectively aware of a substantial risk to Plaintiff Cox. Without those particulars, the Court is left to infer that prison officials should have been aware of a general risk to Plaintiff Cox based on her transgender status. However, this Court and the U.S. Supreme Court have routinely rejected similar arguments in the context of deliberate difference claims, stating that prison officials are simply not liable under the Constitution for failing to alleviate a significant risk that they should have perceived but did not. So to state it somewhat differently, Your Honor, a plaintiff is not relieved of their obligation of pleading that prison officials are subjectively aware of a substantial risk merely because they plead facts that might tend to show that prison officials should be aware of a possible risk. And because what we have here is a complaint that does not allow the Court to infer that prison officials were aware of a substantial risk to Plaintiff Cox's safety, again, either from her assailants or from other inmates generally, there is nothing on which we can base Eighth Amendment liability in this case. And I see that my time is about to expire, so if there are no further questions from the Court, I'll simply conclude by stating that while the Eighth Amendment does impose an obligation upon prison officials to take every case of an inmate-on-inmate assault will give rise to a constitutional claim, it is only where prison officials are subjectively aware of a substantial risk to that inmate's safety and then fail to take reasonable steps to protect that inmate that there is liability under the Eighth Amendment. And in this case, what we have is a lack of facts demonstrating that these defendants were subjectively aware of a substantial as opposed to a merely possible risk to Plaintiff Cox's safety. Furthermore, the complaint does show that once they become aware of those facts, they respond reasonably by taking additional steps to protect Plaintiff Cox from further harm. And because we are left with the facts of the amended complaint as pled, there can be no Eighth Amendment liability shown here. If there are no further questions for the Court, I'll thank the panel for its time. All right. Thank you so much. Well, of the two cases that he just mentioned, the Diamond case and the Supreme Court case, Farmer v. Brennan, it wasn't a specific thing that it was a general, being exposed to a general risk of harm. And in that case, in both those cases cited by the judge in Judge Treadwell in the Middle District here, who ruled for the transgender inmate, and also in Farmer v. Brennan, who where the Supreme Court of the United States ruled for the transgender, they said there was this general problem that they kept getting exposed to this. And that they were deliberately indifference. That's, it's Farmer v. Brennan where we got the language of deliberately indifference. And it defines it right on point. And it says, and he just said they could have done it, transferred him to a place where they were a pre-adorn, where he'd been safe. Your Honor, I had a, I mean, Your Honors, I already had a case here, maybe right after the Coleman Jackson case, where the inmate had been in the prison lockdown in Georgia State for 17 years. And I kept arguing and I said, they can transfer him to a safe environment. And that safe environment was a long prison, state prison, where they hired, they, they, they, they, they incarcerated ex-police, lawyers, and even some judges. Well, why couldn't you bring a suit for an injunction? What? You can bring a suit for injunctive relief. This is a damages action. Yes. And well, under the statute, you can bring a lawsuit, I suggest, against the prison authorities ahead of time and make out a case that an attack was likely to occur, whatever it is, even if it is possible, and then have an injunction entered requiring the person to be put in solitary confinement or some, some isolated confinement. Well, in that case. But that's not, but that's not a money damages case. Well, no, it, it can be. I mean, 1983, 42 U.S.C. 1983 provides for injunctive relief, too. The problem, the problem for you, temporarily, was that Mr. Cox was out of prison. He was out of prison when I filed suit. At that point, you couldn't seek injunctive relief. That's correct. He would have had to have sought injunctive relief earlier when he was arrested. And I didn't. And I didn't. And it's not, but I did in this case. I was talking about hypotheticals. A person like this can file a lawsuit in theory and seek injunctive relief. Yeah, well, by analogy, I, in that case I just cited to you where the, even after I argued, the Attorney General gets up to argue and the panel said, you're going to let him out or we're going to let him out. He says, I'm going to let him out. So they transferred him immediately to this segregated facility and he was safe. He turned out fine. Matter of fact, and that's the kind of thing that should have been done. It wasn't. They were doing the liberty and indifference. They kept passing him down the line. He keeps going and he says, look, I'm transgender. It's obvious he was. And I'm making a complaint under PREA that you got to make separate accommodations for me. And they didn't do it. I've got three other cases of transgenders that are in the district court right now. And this, and I, this isn't in the record, but I submit to you as an officer of the court, it's happening on all three of these cases in the district courts in Georgia. It's got to put a stop to it. And it should happen right now, not just pass it off. And the, this particular district court is very well known for being unpopular. Maybe I need to get a better class of clients. But after the Coleman Jackson case that freed up 10,000 inmates, I'm afraid I became very popular in the prison system. I'm trying to do something to help these people out, including my client right here. And I submit that we need the relief of this court. It, oh, you could say it's technical and you got to do it. Well, I'll just refile it with additional facts. But right now is we got to deal with what is, what is happening in the real world out there. And I appreciate your attention to this case. I've handled this case for several years. And it's really taken a burden off to me to hand it off to you guys. Thank you very much. Okay, Mr. Stokes. Thank you very much. Would I take this with me, I guess? All right. Our third case is number 20-123.